UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

BINDER SCIENCE, LLC; THOMAS WENTZLER,
Plaintiffs,

v.

HIG ASSOCIATES LLC;
YITZCHOK GANTZ, a/k/a ISAAC GANTZ,
Defendants.
-------------------------------------------------------------X

Civil Action No.: 1:25-cv-04783-NGG-VMS

ANSWER AND COUNTERCLAIMS OF DEFENDANTS

Defendants HIG Associates LLC and Yitzchok Gantz a/k/a Isaac Gantz, by and through undersigned counsel, hereby answer the Complaint of Plaintiffs Binder Science, LLC and Thomas Wentzler dated August 27, 2025 , and assert counterclaims as follows.

## GENERAL RESPONSE

1. Defendants deny that Plaintiffs are entitled to any relief whatsoever. The Complaint is premised upon conclusory allegations of fraudulent inducement, statutory violations, and intentional misconduct without pleading facts sufficient to satisfy the heightened pleading standard required under Federal Rule of Civil Procedure 9(b), which mandates that "a party must state with particularity the circumstances constituting fraud." The United States Court of Appeals for the Second Circuit has repeatedly held that fraud claims must "specify the statements that the plaintiff contends were fraudulent, identify the speaker, state where and when the statements were made, and explain why the statements were fraudulent," as articulated in Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). The Complaint fails to meet this standard because, although Plaintiffs allege in paragraph 36 of the Complaint that Defendants provided "false, misleading, and deceptive statements" , they do not quote any specific false statement, identify the exact words used, nor allege facts demonstrating contemporaneous intent not to perform at the time of contracting. Accordingly, the Complaint fails as a matter of law and should be dismissed or limited accordingly.

## RESPONSES TO SPECIFIC ALLEGATIONS

2. Plaintiffs allege in paragraph 7 of the Complaint that Defendants fraudulently induced Plaintiffs to enter into the Consulting Agreement by promising that they would assist Plaintiffs in consolidating their MCA debt. Defendants deny this allegation in its entirety. Defendants further state that any statements alleged by Plaintiffs constitute, at most, expressions of future intent or contractual performance and do not constitute actionable fraud. Plaintiffs have failed to allege facts demonstrating that Defendants lacked intent to perform at the time the Consulting Agreement was executed. To the extent Plaintiffs rely on allegations of non-performance, such allegations sound in contract, not fraud, and do not give rise to an independent tort claim.

3. Plaintiffs allege in paragraphs 12 and 45 that Defendants "ran away" with $300,000 and refused to return funds. Defendants deny these allegations and deny any wrongdoing. The rights and obligations of the parties are governed by the Consulting Agreement referenced in the Complaint. Plaintiffs do not allege that the Consulting Agreement contained any provision guaranteeing a specific outcome, requiring successful consolidation as a condition precedent to compensation, or mandating the return of fees under the circumstances alleged. Plaintiffs' claim that Defendants were obligated to return funds constitutes an improper attempt to impose obligations beyond the terms of the written agreement.

4. Plaintiffs allege in paragraph 13 that Binder Science filed for Chapter 11 bankruptcy on or about July 6, 2024 with approximately $32,000,000 in debt, and attempt to suggest that Defendants' conduct caused or contributed to that filing. Defendants deny any causal connection between the Consulting Agreement and Plaintiffs' financial condition. Plaintiffs' own allegations establish that they were experiencing substantial financial distress prior to entering into the Consulting Agreement. The Complaint fails to allege facts demonstrating that Defendants' conduct was the proximate cause of Plaintiffs' alleged losses, and any such claim is speculative and unsupported by the pleaded facts.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE – FAILURE TO PLEAD FRAUD WITH PARTICULARITY UNDER FEDERAL RULE OF CIVIL PROCEDURE 9(B)

5. Plaintiffs' fraud-based causes of action, including the claims labeled as fraudulent inducement in paragraphs 53 through 60 and statutory fraud under the Texas Deceptive Trade Practices Act in paragraphs 35 through 42 of the Complaint , fail as a matter of law because they do not satisfy the heightened pleading requirement imposed by Federal Rule of Civil Procedure 9(b). Rule 9(b) explicitly mandates that "a party must state with particularity the circumstances constituting fraud." The United States Court of Appeals for the Second Circuit has repeatedly held that to satisfy Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). Plaintiffs' Complaint alleges in paragraph 36 that Defendants provided "false, misleading, and deceptive statements" but does not quote a single specific false statement, does not identify the exact language allegedly used, and does not plead contemporaneous facts showing intent not to perform at the time of contracting. The Second Circuit in Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004), made clear that "conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough."

6. The Complaint relies primarily on the allegation of non-performance described in paragraphs 29 through 33 , yet non-performance alone cannot establish fraud. As the court stated in O'Brien v. National Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991), "Rule 9(b) is not satisfied

where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" Plaintiffs' failure to plead the who, what, when, where, and why of any alleged misrepresentation mandates dismissal or limitation of their fraud-based claims.

**SECOND AFFIRMATIVE DEFENSE – INDEPENDENT LEGAL DUTY REQUIREMENT AND ECONOMIC LOSS RULE**

7. Plaintiffs' claims improperly attempt to convert what is at most a contractual dispute into tort and statutory claims seeking treble and punitive damages. The gravamen of the Complaint is that Defendants allegedly failed to perform consulting services under the written Consulting Agreement described in paragraphs 26 through 28.

8. However, courts have consistently rejected attempts to dress up breach of contract allegations as tort claims absent violation of an independent legal duty. In Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (1987), the court held that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." The Second Circuit reaffirmed this principle in Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 20 (2d Cir. 1996), holding that a fraud claim cannot be maintained where it "arises out of the same facts as the breach of contract claim" and seeks the same damages. Plaintiffs allege in paragraph 29 that "Defendants did not perform any services" , and in paragraph 33 that Defendants "ran away with Plaintiffs' $300,000".

9. These allegations, even if assumed true, describe alleged non-performance under a contract and do not establish a duty independent of that contract. Courts have consistently held that where the damages alleged are purely economic and flow directly from the contract, tort remedies are barred. Plaintiffs' attempt to invoke statutory causes of action does not alter the fundamental contractual nature of the dispute.

**THIRD AFFIRMATIVE DEFENSE – LACK OF REASONABLE OR JUSTIFIABLE RELIANCE**

10. Even assuming arguendo that representations were made, Plaintiffs cannot establish reasonable reliance as a matter of law. In Emergent Capital Investment Management, LLC v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003), the Second Circuit held that a plaintiff must demonstrate that its reliance was reasonable and that it "took reasonable steps to protect itself against deception." Plaintiffs allege in paragraph 23 that Binder Science was founded in 2008 and operated in the upstream oil and gas industry , and in paragraph 8 admit that they owed tens of millions of dollars in debt at the time of the Consulting Agreement.

11. These admissions demonstrate that Plaintiffs were sophisticated commercial actors operating a multi-million-dollar enterprise. Courts have routinely rejected fraud claims where sophisticated parties fail to protect themselves through contractual safeguards. In Grumman Allied Industries, Inc. v. Rohr Industries, Inc., 748 F.2d 729, 737 (2d Cir. 1984), the court held that "where

a party has the means to discover the truth by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance." Plaintiffs do not allege that they were denied access to information, that they sought clarification of contract terms, or that they inserted protective provisions in the agreement. Their failure to do so defeats the reliance element required for fraud.

**FOURTH AFFIRMATIVE DEFENSE- ABSENCE OF PROXIMATE CAUSATION AND LOSS CAUSATION**

12. Plaintiffs attempt to link the alleged $300,000 consulting payment to Binder Science's Chapter 11 bankruptcy filing in July 2024, as described in paragraph 13 of the Complaint . However, Plaintiffs simultaneously admit that they carried approximately $32,000,000 in debt at the time of bankruptcy and that they were already in extreme financial distress prior to entering into the Consulting Agreement, as stated in paragraphs 4 and 8.

13. The Supreme Court in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 342 (2005), held that plaintiffs must demonstrate that the alleged misrepresentation "proximately caused the economic loss." Similarly, the Second Circuit in Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005), emphasized that plaintiffs must allege facts showing that the defendant's conduct was the direct cause of the claimed damages. A consulting fee representing less than one percent of total admitted liabilities cannot plausibly be the proximate cause of insolvency. Plaintiffs' own pleadings establish that their financial collapse predated and far exceeded the alleged consulting fee, thereby severing any plausible causal chain.

**FIFTH AFFIRMATIVE DEFENSE – FAILURE TO MITIGATE DAMAGES**

14. Plaintiffs seek compensatory, treble, and punitive damages as set forth in the Prayer for Relief. However, the law imposes upon plaintiffs a duty to mitigate damages. In Air Et Chaleur, S.A. v. Janeway, 757 F.2d 489, 494 (2d Cir. 1985), the court held that a party "may not recover for damages that could have been avoided with reasonable efforts." Plaintiffs do not allege that they provided formal notice of breach prior to filing suit, do not allege that they sought to terminate the Consulting Agreement promptly, and do not allege that they engaged substitute consultants immediately upon alleged non-performance. Their own pleadings reveal a significant delay between the August 2023 agreement and the August 2025 filing of this action . Such delay, without documented mitigation efforts, bars or limits recovery.

**SIXTH AFFIRMATIVE DEFENSE – WAIVER, ESTOPPEL, AND RATIFICATION**

15. Plaintiffs' conduct following execution of the Consulting Agreement may constitute waiver, ratification, or estoppel. In Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Management, L.P., 7 N.Y.3d 96, 104 (2006), the court held that waiver occurs when a party intentionally relinquishes a known right, and such waiver may be inferred from conduct. Plaintiffs allege in

paragraph 12 that they sent demand letters in 2023 and 2025 , which implies continued recognition of the contractual relationship rather than immediate rescission. Courts have held that a party who affirms a contract after learning of alleged fraud may be deemed to have ratified the agreement. The absence of prompt rescission or repudiation bars equitable relief and limits statutory remedies.

**SEVENTH AFFIRMATIVE DEFENSE – LACK OF SCIENTER**

16. Fraud requires proof of scienter, meaning a knowing misrepresentation of material fact. In Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994), the court held that plaintiffs must allege facts giving rise to a "strong inference of fraudulent intent." Plaintiffs' Complaint does not allege contemporaneous facts demonstrating that Defendants lacked intent to perform at the time of the Consulting Agreement, but merely alleges subsequent dissatisfaction with performance in paragraphs 29 through 33 . Allegations of motive alone are insufficient. Without particularized facts establishing intent at the time of contracting, scienter cannot be inferred.

Below is the revised Counterclaims section with all document citation references removed from the body paragraphs, as requested. The substance, structure, and case law remain intact.

**COUNTERCLAIMS**

**FIRST COUNTERCLAIM – DEFAMATION PER SE**

**17.** Defendants repeat and reallege each and every allegation contained in their Answer and Affirmative Defenses as if fully set forth herein. Plaintiffs allege that HIG Associates LLC "is an empty shell used by its sole owner … to shelter his fraudulent business activities." This statement is not framed as opinion but as a purported factual assertion of criminal and fraudulent conduct. It was published in a publicly filed federal Complaint accessible through PACER and other public reporting services, thereby satisfying the publication element. Under controlling precedent, a statement that imputes serious criminal conduct or fraudulent business practices constitutes defamation per se. In Liberman v. Gelstein, 80 N.Y.2d 429, 435 (1992), the court held that statements "charging plaintiff with a serious crime" or that tend to injure a party in its trade or business are defamatory per se and actionable without proof of special damages. The allegation that Defendants engaged in "fraudulent business activities" is precisely the type of statement that "tends to disparage a person in the way of his office, profession or trade," which the Liberman court recognized as inherently damaging. Furthermore, the United States Supreme Court made clear in Milkovich v. Lorain Journal Co., 497 U.S. 1, 18 (1990), that a statement is actionable if it implies an assertion of objective fact that can be proven true or false. Plaintiffs' assertion that HIG Associates was used to "shelter fraudulent business activities" is capable of objective verification and is demonstrably false. Plaintiffs lacked evidentiary support for this allegation at the time of filing and acted with reckless disregard for its truth or falsity, satisfying the "actual malice" standard as defined in St. Amant v. Thompson, 390 U.S. 727, 731 (1968). The reputational harm to Defendants arising from these publicly filed accusations is presumed under defamation per se doctrine, and Defendants are entitled to compensatory and punitive damages.

**SECOND COUNTERCLAIM – TRADE LIBEL AND INJURIOUS FALSEHOOD**

18. Defendants further allege that Plaintiffs' statements attacking the legitimacy of HIG Associates LLC constitute trade libel and injurious falsehood because they directly impugn the company's business integrity. Trade libel occurs where false statements are published with malice and result in special damages to a business. In Ruder & Finn Inc. v. Seaboard Surety Co., 52 N.Y.2d 663, 670 (1981), the court held that injurious falsehood requires publication of false statements derogatory to the plaintiff's business, made with malice, and causing special damages. Plaintiffs' allegation that HIG Associates has "no legitimate place of business, no assets and no employees" is not rhetorical hyperbole but a factual assertion attacking the existence and legitimacy of the company. Such statements, when made in a federal pleading without evidentiary support, go beyond fair comment and constitute actionable disparagement. Courts have recognized that knowingly false statements impugning the solvency or legitimacy of a business are actionable when made with reckless disregard for truth. Plaintiffs' accusations were not necessary to state a breach of contract claim and were instead designed to portray Defendants as fraudulent actors in order to leverage reputational harm. As a direct and proximate result of these statements, Defendants have suffered damage to business relationships, prospective economic advantage, and professional reputation, entitling them to recover damages.

**THIRD COUNTERCLAIM – ABUSE OF PROCESS**

19. Defendants allege that Plaintiffs misused judicial process for an improper collateral objective. Plaintiffs' Complaint goes beyond alleging breach of a consulting agreement and instead repeatedly characterizes Defendants' conduct as criminal and predatory. The tone and framing of the Complaint demonstrate that Plaintiffs sought not merely contractual redress but reputational harm. In Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994), the court explained that abuse of process lies where legal process is used "to obtain a collateral objective that is outside the legitimate ends of the process." Plaintiffs possessed a contractual remedy yet elected to frame the dispute as criminal fraud without satisfying Rule 9(b). The absence of particularized fraud allegations combined with inflammatory characterizations supports the inference that the action was filed not solely to resolve a contract dispute but to coerce settlement through reputational pressure. Where a party uses legal filings to exert improper leverage rather than to adjudicate a legitimate claim, courts have recognized actionable abuse of process. Plaintiffs' conduct meets this standard.

**FOURTH COUNTERCLAIM – ATTORNEYS' FEES UNDER INHERENT AUTHORITY**

20. Defendants further seek recovery of attorneys' fees under the Court's inherent authority to sanction bad-faith litigation conduct. In Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991), the Supreme Court held that federal courts possess inherent power to assess attorneys' fees when a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Plaintiffs' decision to publicly accuse Defendants of operating a fraudulent shell company without particularized factual support, and to seek treble and punitive damages based on conclusory allegations, demonstrates litigation conduct that may warrant sanctions. Plaintiffs admitted that they carried

tens of millions of dollars in debt at the time of the Consulting Agreement, yet attempt to attribute their insolvency to a $300,000 consulting agreement. Such allegations, lacking factual causation and scienter, reflect a reckless escalation of a contract dispute into reputational litigation. Should discovery confirm that Plaintiffs lacked evidentiary support at the time of filing, Defendants reserve the right to seek sanctions and full recovery of attorneys' fees under the Court's inherent authority and 28 U.S.C. § 1927.

**CONCLUSION**

21. For all of the foregoing reasons, Plaintiffs' Complaint is legally deficient, factually unsupported, and premised upon conclusory allegations that fail to satisfy the pleading standards required under Federal Rules of Civil Procedure 8 and 9(b). Plaintiffs have attempted to transform what is, at most, a contractual disagreement into sweeping accusations of fraud and criminal conduct without identifying specific misrepresentations, without alleging contemporaneous fraudulent intent, and without plausibly establishing proximate causation between a $300,000 consulting agreement and a preexisting $32,000,000 insolvency. The Supreme Court has made clear that a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face," as articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and further refined in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), which held that courts are not required to accept legal conclusions couched as factual allegations. Plaintiffs' pleading does not meet that standard. Moreover, Plaintiffs' public accusations of fraudulent and criminal conduct have inflicted reputational harm upon Defendants and give rise to actionable counterclaims. Accordingly, Defendants respectfully request that this Court dismiss the Complaint in its entirety with prejudice, enter judgment in favor of Defendants on all claims asserted, award Defendants damages on their counterclaims, grant attorneys' fees and costs as permitted by law, and provide such other and further relief as this Court deems just and proper.

Dated: Valhalla, New York

February 12th , 2026

Respectfully submitted,

LAW OFFICES OF FARVA SCOTT

By: /s/ Farva Scott
Farva Scott, Esq.
Attorney for Defendants
HIG Associates LLC and
Yitzchok Gantz a/k/a Isaac Gantz
420 Columbus Avenue, Suite 112
Valhalla, NY 10595
Tel: (347) 352-2470
Email: farvascottesq@gmail.com